# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

MARC A. STEPHENS,

    Plaintiff,

    v.

GURBIR S. GREWAL, et al.,

    DEFENDANTS.

CIVIL ACTION NO.:
1:22-cv-01989-KMW-MJS

## DOCUMENT FILED ELECTRONICALLY

---

**BRIEF IN SUPPORT OF DEFENDANTS GURBIR S. GREWAL, THE ATLANTIC COUNTY PROSECUTOR'S OFFICE, AND MICHAEL MATTIOLI'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT IN LIEU OF FILING AN ANSWER PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

MATTHEW J. PLATKIN
ACTING ATTORNEY GENERAL OF NEW JERSEY
R. J. Hughes Justice Complex
P.O. Box 116
Trenton, New Jersey 08625
(609) 376-2780
Attorney for Defendants,
Gurbir S. Grewal, the Atlantic County Prosecutor's Office, and Michael Mattioli

Peter Sosinski
Deputy Attorney General
On the Brief

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

PROCEDURAL AND FACTUAL BACKGROUND ....................................................... 2

STANDARD OF REVIEW ............................................................................................... 5

    A.    Federal Rule of Civil Procedure 12(b)(1) ...................................................... 5

    B.    Federal Rule of Civil Procedure 12(b)(6) ...................................................... 6

ARGUMENT .................................................................................................................... 7

POINT I

        ELEVENTH      AMENDMENT      SOVEREIGN
        IMMUNITY BARS ALL CLAIMS AGAINST THE
        MOVING DEFENDANTS ........................................................... 7

POINT II

        ALL   CIVIL   RIGHTS   CLAIMS   AGAINST   THE
        PROSECUTOR   DEFENDANTS   SHOULD   BE
        DISMISSED   BECAUSE   THEY   ARE   NOT
        CONSIDERED "PERSON[S]" AMENABLE TO SUIT
        UNDER EITHER § 1983 OR NJCRA ................................................... 10

           a.  42 U.S.C. § 1983 ............................................................... 10

           b.  NJCRA ............................................................................. 12

POINT III

      DETECTIVE     MICHAEL     MATTIOLI     ENJOYS
      ABSOLUTE WITNESS IMMUNITY ...................................................... 13

POINT IV

      QUALIFIED IMMUNITY BARS PLAINTIFF'S CLAIMS
      AGAINST DETECTIVE MICHAEL MATTIOLI AND
      FORMER    AG    GURBIR    GREWAL    IN    THEIR
      INDIVIDUAL CAPACITY ....................................................................... 14

POINT V

      PLAINTIFF'S     TORT     CLAIMS     ARE     BARRED
      BECAUSE HE HAS NOT ALLEGED COMPLIANCE
      WITH THE MANDATORY NOTICE PROVISION OF
      THE TCA ................................................................................................. 17

CONCLUSION ............................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama v. Pugh*,
    438 U.S. 781 (1978) ................................................................................................ 8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................... 6, 15, 16

*Estate of Bardzell v. Gomperts*,
    515 F. Supp. 256 (D.N.J. 2021) ........................................................................... 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................. 6

*Brawer v. Horowitz*,
    535 F.2d 830 (3d Cir. 1976) ............................................................................. 13

*Briscoe v. Lahue*,
    460 U.S. 325 (1983) ..................................................................................... 13, 14

*Brown v. Twp. of Berlin Police Dep't*,
    2008 WL 5100461 (D.N.J. Nov. 25, 2008) .................................................... 11

*Coles v. Carlini*,
    162 F. Supp. 3d 380 (D.N.J. 2015) ................................................................. 12

*Connor v. Powell*,
    744 A.2d 1158 (N.J. 2000) *cert. denied*, 530 U.S. 1216 (2000) .................... 17

*Cory v. White*,
    457 U.S. 85 (1982) ............................................................................................. 8

*D.D. v. Univ. of Med. & Dentistry of N.J.*,
    61 A.3d 906 ....................................................................................................... 18

*Dancy v. Collier*,
    No. 07-4329, 266 Fed. Appx. 102 (3d Cir. 2008) ....................................... 14

*Didiano v. Balicki*,
    488 F. App'x 634 (3d Cir. 2012) ...................................................................... 12

*Evans v. City of Newark,*
  2016 WL 2742862 (D.N.J. May 10, 2016) ................................................................ 11

*Fitchik v. N.J. Transit Rail Operations, Inc.,*
  873 F.2d 655 (3d Cir. 1989) .................................................................................. 8

*Fowler v. UPMC Shadyside,*
  578 F.3d 203 (3d Cir. 2009) .................................................................................. 7

*Gerstein v. Pugh,*
  420 U.S. 103 (1975) ............................................................................................ 17

*Hagan v. Rogers,*
  No. 06-4491, 2008 U.S. Dist. LEXIS 39019 (D.N.J. May 12, 2008) ...................... 9

*Harlow v. Fitzgerald,*
  457 U.S. 800 (1982) ............................................................................................ 15

*Henry v. Essex County Prosecutor's Office,*
  2017 WL 1243146 (D.N.J. Feb. 24, 2017) ............................................................ 11

*Hilsenrath v. Sch. Dist. of the Chathams,*
  No. 18-966, 2018 U.S. Dist. LEXIS 100100 (D.N.J. June 13, 2018) ...................... 9

*Hockaday v. N.J. Att'y General's Office,*
  No. 16-762, 2016 U.S. Dist. LEXIS 157415 (D.N.J. Nov. 14, 2016) ...................... 9

*Hyatt v. County of Passaic,*
  340 F. App'x 833 (3d Cir. 2009) ........................................................................... 10

*Innis v. Wilson,*
  334 F. App'x 454 (3d Cir. 2009) ........................................................................... 16

*Jutrowski v. Twp. Of Riverdale,*
  904 F.3d 280 (3d Cir. 2018) .................................................................................. 16

*Karkalas v. Marks,*
  845 F. App'x 114 (3d Cir. 2021) ........................................................................... 15

*Lutz v. Twp. of Gloucester,*
  380 A.2d 280 (N.J. Sup. Ct. App. Div. 1977) ...................................................... 18

*Malleus v. George,*
  641 F.3d 560 (3d Cir. 2011) ............................................................................... 6, 7

*Mobley v. City of Atl. City Police Dep't,*
    89 F. Supp. 2d 533 (D.N.J. 1999) ................................................................. 12

*Moncalvo v. City of Plainfield,*
    2016 U.S. Dist. LEXIS 156157 (D.N.J. 2016 ............................................... 11

*Mortensen v. First Fed. Sav. & Loan Ass'n,*
    549 F.2d 884 (3d Cir. 1977) .................................................................. 5, 6

*Oliver v. Roquet,*
    858 F.3d 180 (3d Cir. 2017) ...................................................................... 15

*Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess,*
    297 F.3d 310 (3d Cir. 2002) ........................................................................ 8

*Palma v. Atlantic County,*
    53 F. Supp. 2d 743 (D.N.J. 1999) ............................................................. 16

*Pennhurst State Sch. & Hosp. v. Halderman,*
    465 U.S. 89 (1984) ............................................................................... 7, 8

*Quern v. Jordan,*
    440 U.S. 332 (1979) .................................................................................. 11

*Rehberg v. Paulk,*
    566 U.S. 356 (2012) .................................................................................. 13

*Smolow v. Hafer,*
    353 F. Supp. 2d 561 (E.D. Pa. 2005) ......................................................... 5

*United States v. Glasser,*
    750 F.2d 1197 (3d Cir. 1984), *certif. denied,* 471 U.S. 1018 (1985) ............. 17

*West v. Atkins,*
    487 U.S. 42 (1988) .................................................................................. 10

*Will v. Mich. Dep't of State Police,*
    491 U.S. 58 (1989) ....................................................................8, 10, 11, 12

*Williams v. Hepting,*
    844 F.2d 138 (3d Cir. 1988) ............................................................... 13, 14

*Wright v. State,*
    169 N.J. 422 (2001) .................................................................................. 11

**Statutes**

42 U.S.C. § 1983 ................................................................................*passim*

N.J. Stat .Ann. 59:8-3 ............................................................... 17

N.J. Stat. Ann. 59:8-8 ............................................................... 18

N.J. Stat. Ann. 59:8-9 ............................................................... 18

N.J. Stat. Ann. § 52:17B-1 ....................................................... 9

N.J. Stat. § 2C:33-4.1 .............................................................. 4

New Jersey Civil Rights Act ........................................... 1, 2, 5, 10, 12

New Jersey Tort Claims Act ............................................17, 18, 19

## PRELIMINARY STATEMENT

Plaintiff, Marc A. Stephens, has filed this lawsuit against the Atlantic County Prosecutor's Office ("ACPO") and Detective Sergeant Michael Mattioli (together, "ACPO Defendants"); and former New Jersey Attorney General Gurbir S. Grewal (collectively "State Defendants"), and other Defendants, under 42 U.S.C. § 1983, the New Jersey Civil Rights Act ("NJCRA"), and tort claims. The gist of Plaintiff's allegations against Defendants stem from a prosecution after Defendant Robert Blaskiewicz, Jr., a Stockton University professor, reported that he was being cyber harassed and threatened by Plaintiff. After acquiring testimony and email evidence provided by Mr. Blaskiewicz, ACPO Defendants prosecuted the matter, and Plaintiff was indicted by a grand jury in Atlantic County on September 18, 2018. Although the court determined that the ACPO Defendants made a *prima facie* case that Plaintiff committed one count of fourth-degree cyber harassment, Plaintiff's language was protected by the First Amendment of the United States Constitution and Article I, paragraph 6 of the New Jersey Constitution, and the matter was dismissed.

Plaintiff's Complaint should be dismissed against the State Defendants on multiple grounds.

First, Eleventh Amendment sovereign immunity bars all claims against the State Defendants. Similarly, sovereign immunity also bars Plaintiff's pendent State law tort claims against all State Defendants. Second, ACPO, Mattioli and former Attorney

General Grewal should be dismissed in their official capacities because they are not "persons" amenable to suit under 42 U.S.C. § 1983 and NJCRA. Third, Mattioli enjoys witness immunity for testifying in front of the grand jury. Fourth, Michael Mattioli enjoys qualified immunity because he did not violate Plaintiff's "clearly established" rights, and Plaintiff failed to plead that former Attorney General Grewal had any personal involvement in Plaintiff's prosecution. Lastly, any common law tort claims are barred because of Plaintiff's failure to serve a timely notice of claim on all Defendants.

Consequently, Plaintiff's Complaint should be dismissed with prejudice.

## PROCEDURAL AND FACTUAL BACKGROUND

Some facts and procedural history presented here do not involve the moving Defendants, but have been included to provide an accurate account of the factual background. On April 4, 2022, Plaintiff initiated this action against ACPO Defendants and former Attorney General Grewal by filing this *pro se* Complaint. See ECF No. 1. The gist of Plaintiff's allegations against Defendants stem from a prosecution after Defendant Robert Blaskiewicz Jr., a Stockton University professor, reported that he was being cyber harassed and threatened by Plaintiff. Although difficult to comprehend, Plaintiff's complaint seems to be comprised of many baseless conspiracy theories and alleged cyber-attacks that Professor Blackiewicz, and his members known as the "Skeptic Society," allegedly orchestrated on Plaintiff and members of his family. *Id.* ¶ 16. Plaintiff alleges that Professor Blackiewicz is the creator of multiple websites where

individuals have written blog posts. *Ibid.* In those posts, Plaintiff alleges that members of the website threatened him and his family's life between the years of 2011 and 2017. *See id.* ¶¶ 13-43.

On January 8, 2016, Plaintiff sent an email titled "FIRST NOTICE" to Professor Blackiewicz. ECF 1, Ex. 19. The email consisted of demands warning Professor Blackiewicz to "stop threatening to murder [his] family, stop hacking [his] phone, email and computers, etc." *Ibid.* The email also accuses the "Skeptic Society" for killing his family members and intentionally giving cancer "and other diseases" to kill people. *Ibid.*

On February 3, 2017, Plaintiff sent email titled "SECOND NOTICE" to Professor Blackiewicz. ECF 1, Ex. 20. The email consisted of similar accusations as the "FIRST NOTICE" email along with demands to stop "framing [him] with crimes." *Ibid.* The email also warns Professor Blackiewicz that he will release multiple videos onto the internet that Professor Blackiewicz and members of the "Skeptic Society" murder judges, politicians, police, federal agents, military soldiers, etc." *Ibid.*

On February 6, 2017, Plaintiff emailed local police offices and Stockton University staff titled "FIRST WARNING REGARDING DEATH THREATS and NOTICE UNDER COMMON LAW" warning them if anyone touches or makes death threats against members of his family and/or close friends, he would retaliate because he has a "right to attack." ECF 1, Ex. 23. Although Professor Blackiewicz did not file a formal complaint, after the email, the Stockton University Campus Police

Department sent Plaintiff a letter indicating that they were investigating the incident and that he was banned from the campus premises. ECF 1, Ex. 26.

On November 28, 2017, Plaintiff emailed Professor Blackiewicz, members of his attorney's law firm, and Stockton University staff, titled "THIRD AND FINAL NOTICE" accusing Professor Blackiewicz of murdering innocent people, including police officers and military men and women. ECF 1, Ex. 24. After this email, Professor Blackiewicz filed a criminal complaint on or around December 8, 2017. Mattioli testified as a witness before a grand jury that he had reviewed the Stockton University investigation file along with the Atlantic County Prosecutor's file. ECF 1, Ex. 28 p. a46. Mattioli testified of the interactions that Plaintiff and Professor Blackiewicz had through emails and blog posts. ECF 1, Ex. 28 p a47-48.  Mattioli testified that Professor Blackiewicz began to worry about his physical harm. *Ibid.* The grand jury indicted Plaintiff on one count of fourth degree cyber harassment pursuant to N.J. Stat. § 2C:33-4.1.

As a result of a motion to dismiss the criminal charges, in January 5, 2022, the Honorable Pamela D'Arcy, J.S.C., reviewed the grand jury testimony and determined that, although the Atlantic County Prosecutor's Office made a *prima facie* case that Plaintiff had committed one county of fourth-degree cyber harassment, Plaintiff's speech in his emails and blogs was protected by the First Amendment of the United States Constitution and Article I, paragraph 6 of the New Jersey Constitution. ECF. 1,

Ex. 32 pp a55-a60. Thereafter, the prosecution of Plaintiff was dismissed, and ACPO did not pursuant the case further.

Plaintiff now attempts to bring suit against Stockton University, Professor Blackiewicz, Galloway Township, the Atlantic County Prosecutor's Office, Detective Sergeant Michael Mattioli, and former AG Grewal, asserting claims under § 1983, NJCRA, and state-law tort claims. See ECF 1.

## STANDARD OF REVIEW

### A.     Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a claim can be dismissed for lack of subject matter jurisdiction. In evaluating a motion to dismiss under Rule 12(b)(1), a district court must first determine whether the defendant's motion attacks (1) the complaint as deficient on its face; or (2) the existence of subject matter jurisdiction in fact. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A defendant's "facial attack" asserts that the plaintiff did not properly plead jurisdiction, whereas a defendant's "factual attack" involves an averment that jurisdiction is lacking on the basis of facts outside of the pleadings. *Smolow v. Hafer*, 353 F. Supp. 2d 561, 566 (E.D. Pa. 2005).

Where a Rule 12(b)(1) motion facially attacks the complaint, the court must take all allegations in the complaint as true. *Mortensen*, 549 F.2d at 891. Where, however, the defendant attacks the court's subject matter jurisdiction in fact, no presumptive

truthfulness attaches to the plaintiff's allegations, and the court may weigh the evidence to satisfy itself that subject matter jurisdiction exists in fact. Id. In both scenarios, the plaintiff bears the burden of proving the existence of subject matter jurisdiction. *Id.*

### B.     Federal Rule of Civil Procedure 12(b)(6)

In lieu of filing an answer to a complaint, a defendant may file a motion to dismiss for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under this Rule, a complaint must state more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading that simply offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do." Id. And, "[n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (citing *Twombly*, 550 U.S. at 557).

Under the *Iqbal/Twombly* pleading framework, a district court should undertake a three-prong analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court should "tak[e] note of the elements a plaintiff must plead to state a claim." Id. Next, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*; *Twombly*, 550 U.S. at 555 (holding that "[f]actual allegations must be enough to raise a right to relief above the speculative level"). Finally, when a plaintiff's complaint contains "well-pleaded factual allegations," the allegations should be presumed veracious, and the court should

ascertain whether they "plausibly give rise to an entitlement for relief." *Malleus*, 641 F.3d at 563. This finding requires more than a mere allegation of an entitlement to relief or demonstration of the "mere possibility of misconduct[.]" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).[1]

State Defendants' motion now follows.

## ARGUMENT

### POINT I
### ELEVENTH AMENDMENT SOVEREIGN IMMUNITY BARS ALL CLAIMS AGAINST THE MOVING DEFENDANTS.

The Eleventh Amendment to the United States Constitution prohibits "suits brought in federal courts by a State's own citizens as well as by citizens of another state" against the State. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also* U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."). It is a jurisdictional bar and divests federal courts of their subject matter jurisdiction to hear a case. *See Pennhurst*, 465 U.S. at 98-100. This immunity protects non-consenting States from suits brought in federal court by private citizens.

---

[1] Although Plaintiff has failed to allege any factual claims against former Attorney General Grewal, State Defendants will respond on his behalf to confirm that he seeks dismissal of whatever claims supposedly may have been intended against him.

Id. at 100-01. It also extends beyond the State and immunizes state agencies, departments, and officials, provided they constitute "arm[s] of the state." *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989). A state agency or department is an "arm" of the State when the State "is the real, substantial party in interest." *Pennhurst*, 465 U.S. at 101 (citations omitted).

Exceptions to sovereign immunity apply primarily in three situations: "(1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (citation omitted). Suits for prospective injunctive and declaratory relief, however, are unsustainable against States and state agencies because of the Eleventh Amendment. *See Cory v. White*, 457 U.S. 85, 90-91 (1982). Within this district, it has been determined that when Prosecutors' offices and their employees are engaged in their traditional law-enforcement functions, they are considered an "arm of the state" and therefore enjoy Eleventh Amendment immunity from claims pertaining to the performance of those functions. *Estate of Bardzell v. Gomperts*, 515 F. Supp. 256, 267-70 (D.N.J. 2021) (holding that New Jersey Prosecutor's Office is an "arm of the state" applying the analysis in *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989)).

Here, the claims against ACPO Defendants must be dismissed because of the alleged behavior involving law enforcement activities of investigating a matter and testifying to a grand jury. As such, since the ACPO Defendants were engaged in a law

enforcement function, they were an arm of the state entitled to Eleventh Amendment immunity barring all claims against them. As a result thereof, Plaintiff's Complaint must be dismissed with prejudice as ACPO Defendants as a matter of law.

Additionally, courts in this District have recognized that the New Jersey Office of the Attorney General and its employees enjoy Eleventh Amendment sovereign immunity. *See Hockaday v. N.J. Att'y General's Office*, No. 16-762, 2016 U.S. Dist. LEXIS 157415, at *15-16 (D.N.J. Nov. 14, 2016) (holding that the New Jersey Office of the Attorney General is a "subunit[] of the State" and entitled to sovereign immunity); *Hagan v. Rogers*, No. 06-4491, 2008 U.S. Dist. LEXIS 39019, at *18 (D.N.J. May 12, 2008) (extending Eleventh Amendment sovereign immunity to the Attorney General of New Jersey). Indeed, under state law, the Office of the Attorney General, and its various departments and divisions, operate within the executive branch of New Jersey state government. See N.J. Const. art. V, § IV, para. 1; see also N.J. Stat. Ann. § 52:17B-1 (establishing the Department of Law and Public Safety within the Office of the Attorney General).  Therefore, Eleventh Amendment sovereign immunity shields the former Attorney General Grewal from liability in his official capacities. See *Hilsenrath v. Sch. Dist. of the Chathams*, No. 18-966, 2018 U.S. Dist. LEXIS 100100, at *9 (D.N.J. June 13, 2018) (finding that an official capacity claim against a state official is an action against the State and shares in the State's sovereign immunity). Despite Plaintiff failing to explain Defendant Grewal's involvement in his prosecution, the former Attorney General enjoins Eleventh Amendment sovereign immunity.

## POINT II

## ALL CIVIL RIGHTS CLAIMS AGAINST THE PROSECUTOR DEFENDANTS SHOULD BE DISMISSED BECAUSE THEY ARE NOT CONSIDERED "PERSON[S]" AMENABLE TO SUIT UNDER EITHER § 1983 OR NJCRA.

Plaintiff's claim pursuant to 42 U.S.C. § 1983 and NJCRA in all counts of Plaintiff's Amended Complaint should be dismissed against the State Defendants because they are not amenable to suit under the statute.

### a. 42 U.S.C. § 1983

42 U.S.C. § 1983 provides that "[e]very <u>person</u>" who subjects any citizen to the "deprivation of any rights, privileges, or immunities" secured by the laws "shall be liable to the party injured." 42 U.S.C. § 1983 (emphasis added). Thus, to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States committed by a "person" acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Therefore, pursuant to the plain language of § 1983, only a defendant who falls within the definition of a "person" may be held liable under that act. Notably, courts have roundly held that "neither a State nor its entities or officials acting in their official capacities may be sued for monetary relief under § 1983" because they do not fall within the definition of a "person" for purposes of the statute. *Hyatt v. County of Passaic*, 340 F. App'x 833, 836 (3d Cir. 2009) (*quoting Will v. Michigan Dep't of State Police*, 491 U.S. 58,

71 (1989)).  The reason is because a "suit against a state official in her official capacity is a suit against her office, and therefore amounts to a suit against the state itself," which sovereign immunity prohibits.  *Brown v. Twp. of Berlin Police Dep't*, 2008 WL 5100461, at *2 (D.N.J. Nov. 25, 2008) (*citing Will*, 491 U.S. at 71)); *Quern v. Jordan*, 440 U.S. 332, 341 (1979) (holding that Congress did not abrogate State sovereign immunity when it enacted § 1983).

Courts have held that county prosecutors' offices and their employees acting in their official capacities are "arms" of the State when engaged in their law enforcement and investigative roles and, in that capacity, are not "persons" amenable to suit under § 1983.  *See Henry v. Essex County Prosecutor's Office*, 2017 WL 1243146, at *3 (D.N.J. Feb. 24, 2017) (dismissing Essex County Prosecutor's Office under § 1983 and NJCRA); *Evans v. City of Newark*, 2016 WL 2742862, at *9-10 (D.N.J. May 10, 2016) (holding that the Essex County Prosecutor's Office is not a "person" amenable to suit and dismissing the § 1983 claim against it); *Moncalvo v. City of Plainfield*, 2016 U.S. Dist. LEXIS 156157 *6 fn.1 (D.N.J. 2016) (noting that it could grant the Union County Prosecutor's Office's motion to dismiss on the ground that it is not an entity that can be sued under § 1983). *Cf. Wright v. State*, 169 N.J. 422, 450 (2001) (holding that when county prosecutors act in their law enforcement capacity, they are "agents" of the State).

Consequently, because, once again, Plaintiff's claims arose while the ACPO prosecutors and investigators were engaging in their classic law enforcement functions,

they are considered "arms" of the State and, thus, not amenable to suit under § 1983. This Court should dismiss all civil rights claims in the Complaint accordingly.

Additionally, state officials acting in their official capacities are not "persons" within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). This is because a suit against a state official in his or her official capacity is not a suit against the official, but is a suit against the official's office. <u>Id</u>. Therefore, former Attorney General Grewal would be immune from §1983 claims.

### b. NJCRA

In interpreting the NJCRA as analogous to § 1983, the United States Court of Appeals for the Third Circuit has held that state officials sued in their official capacity were not "persons" under the NJCRA. *Didiano v. Balicki*, 488 F. App'x 634, 637-39 (3d Cir. 2012).

Because they are sued in their capacity as investigators and prosecutors prosecuting a criminal case against Plaintiff, it may be inferred that they are being sued in their official capacities. *See, e.g., Mobley v. City of Atl. City Police Dep't*, 89 F. Supp. 2d 533, 537 (D.N.J. 1999) (construing claims against a public employee as official capacity only where the complaint did not specify); *Coles v. Carlini*, 162 F. Supp. 3d 380, 400 (D.N.J. 2015) (same). Accordingly, civil rights allegations against the State Defendants must be dismissed.

12

## POINT III

## DETECTIVE   MICHAEL   MATTIOLI   ENJOYS ABSOLUTE WITNESS IMMUNITY.

It is well-settled that a witness in a judicial proceeding enjoys an absolute immunity from suit for his words and actions relevant to the judicial proceedings. *Briscoe v. Lahue*, 460 U.S. 325, 342 (1983).  In support of absolute witness immunity, the United States Supreme Court has reasoned that this immunity is necessary to preserve the judicial process; otherwise, the fear of retaliatory litigation could act to deprive the court of critical evidence.  *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012).

Expounding upon the policy considerations undergirding this immunity, the U.S. Court of Appeals for the Third Circuit has explained:

> The function of witnesses is fundamental to the administration of justice.  The court's judgment is based on their testimony and they are given every encouragement to make a full disclosure of all pertinent information within their knowledge. . . .  "Every consideration of public policy requires that they should be as fearless in testifying as the judge and jury are independent in weighing their testimony."

[*Williams v. Hepting*, 844 F.2d 138, 141 (3d Cir. 1988) (quoting *Brawer v. Horowitz*, 535 F.2d 830, 837 (3d Cir. 1976) (citations omitted)).]

In *Hepting*, the Third Circuit extended this immunity to pretrial witness statements, reasoning:

> Witnesses at trial are afforded absolute immunity to encourage complete disclosure in judicial proceedings. . . . The interest in complete disclosure is no less diminished at the pretrial stage . . . .  The tools of the judicial process are

13

> no less present to ferret out the truth at these times.  In
> addition, the criminal defendant enjoys the immediate right
> at all stages of the judicial process to submit his or her own
> evidence and to cross-examine the witnesses. [Id. at 142.]

In the present matter, all of the above policy reasons counsel in favor of extending witness immunity to Mattioli.  A detective like Mattioli is uniquely situated because he conducts criminal investigations but also testifies regarding what he saw and read during those investigations. Thus, he acts both as an investigator and as a witness. Therefore, witness immunity is available for detectives that would be testifying in a judicial system. *Briscoe v. Lahue*, 460 U.S. 325, 326 (1983) ("[a] police officer witness performs the same functions as any other witness).  Here, Defendant Mattioli testified to the grand jury by explained the emails that were sent to Professor Blaskiewicz, after Professor Blaskiewicz filed a criminal complaint against Plaintiff. ECF 1-2 p. a47. Therefore, Plaintiff's claims should be dismissed with prejudice on the basis of absolute witness immunity.

## POINT IV
## QUALIFIED IMMUNITY BARS PLAINTIFF'S CLAIMS AGAINST DETECTIVE MICHAEL MATTIOLI AND FORMER AG GURBIR GREWAL IN THEIR INDIVIDUAL CAPACITY.

Plaintiff's § 1983 claims would also be dismissed based on qualified immunity. "Qualified immunity shields government officials from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dancy v. Collier*, No. 07-4329,

14

266 Fed. Appx. 102 (3d Cir. 2008), quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). At the motion-to-dismiss stage, courts evaluate whether qualified immunity for a constitutional claim applies in tandem with a plausibility analysis. *Karkalas*, 845 F. App'x at 120. The qualified immunity analysis begins with the threshold and critical question of whether the plaintiff has alleged the deprivation of an "actual constitutional right at all," a court examines: (1) whether the complaint contains plausible allegations of a constitutional violation; and (2) whether the asserted constitutional right is clearly established. *Karkalas v. Marks*, 845 F. App'x 114, 118 (3d Cir. 2021) (citations omitted).

Accordingly, and given the secrecy of the grand jury proceeding, the plaintiff could not simply allege that defendants made false statements to the grand jury as such assertions are "speculative" and "threadbare." *Id.* at 119 (*citing Connelly*, 809 F.3d at 790; *see also Oliver v. Roquet*, 858 F.3d 180, 192 (3d Cir. 2017) ("a plaintiff's allegations must be enough to raise a right to relief above the speculative level, and must reflect more than a sheer possibility that a defendant has acted unlawfully"). Thus, the court held that such allegations related to the grand jury proceedings must be excluded from the plausibility analysis. *Id.* at 119.

Here, Plaintiff cannot properly allege that the detective knowingly violated a "clearly established right" while he investigating a criminal complaint filed by a citizen and testified to the emails in a grand jury trial.

As such, "a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556

U.S. at 676 (2009); *see also Innis v. Wilson*, 334 F. App'x 454, 457 (3d Cir. 2009) (indicating that § 1983 plaintiff could not maintain a claim against individual defendant unless said defendant was personally involved in actions causing the claim); Rode, 845 F.2d at 1207 (explaining that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior"). Thus, "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Jutrowski v. Twp. Of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 677) (emphasis added)). Here, Plaintiff also simply fails to properly establish how former Attorney General Grewal was personally involved in violating any "clearly established" right he is alleging.

State Defendants also have qualified immunity because the criminal court had concluded that probable cause had existed for the charges against Plaintiff. In civil rights cases involving claims like the malicious prosecution claim in this case, "the qualified immunity analysis turns on whether the [public defendants] reasonably but mistakenly concluded that probable cause existed to arrest, detain and initiate the criminal investigation." *Palma v. Atlantic County*, 53 F. Supp. 2d 743, 769 (D.N.J. 1999). Although the determination of whether probable cause existed is usually left to the jury, the Court may decide it in the context of a qualified immunity analysis. *Ibid.* Probable cause is "defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Gerstein v.*

*Pugh*, 420 U.S. 103, 111 (1975). A court must look at the "totality of the circumstances" and use a "common sense" approach to the issue of probable cause. *United States v. Glasser*, 750 F.2d 1197, 1205 (3d Cir. 1984), *certif. denied*, 471 U.S. 1018 (1985). A public defendant is entitled to qualified immunity if either: (1) probable cause existed at the time of the public defendant's actions; or (2) if officials of reasonable could disagree whether probable cause existed." *Connor v. Powell*, 744 A.2d 1158 (N.J. 2000) *cert. denied*, 530 U.S. 1216 (2000).

In this case, in deciding the motion to dismiss, the criminal court specifically found that probable cause had existed for the charges against Plaintiff. This finding requires a conclusion that State Defendants have qualified immunity with respect to Plaintiff having been charged.

## POINT V
### PLAINTIFF'S TORT CLAIMS ARE BARRED BECAUSE HE HAS NOT ALLEGED COMPLIANCE WITH THE MANDATORY NOTICE PROVISION OF THE TCA.

Lastly, Plaintiff's tort claims, Counts II through IX, must be dismissed for Plaintiff's failure to comply with the New Jersey Tort Claims Act ("TCA"). The TCA requires all state law tort actions brought against a public entity or a public employee to be preceded by providing the public entity or public employee with notice of one's claims. *See* N.J. Stat .Ann. 59:8-3. The TCA dictates that notice must be filed within 90 days of a claim's accrual or the claimant will be "forever barred" from recovering

against the public entity or public employee.  *See* N.J. Stat. Ann. 59:8-8.  New Jersey courts have commented on the "harshness" of the 90-day requirement and concluded that the purpose of the deadline is to "compel a claimant to expose his intention and information early in the process in order to permit the public entity to undertake an investigation while witnesses are available and the facts are fresh." *D.D. v. Univ. of Med. & Dentistry of N.J.*, 61 A.3d 906, 915 (quoting *Lutz v. Twp. of Gloucester*, 380 A.2d 280 (N.J. Sup. Ct. App. Div. 1977)).   The TCA provides for limited relief from the strict 90-day statutory deadline, if a claimant can show extraordinary circumstances that prevented the timely filing of notice, but a motion seeking such relief must be filed within one year after the accrual of the cause of action.   *See* N.J. Stat. Ann. 59:8-9.

The Complaint does not allege compliance with the mandatory notice provision of the TCA, or that a motion for leave to file a late notice was ever filed.  Given that the Complaint says that the dismissal occurred on January 5, 2022, he was required to file a notice of claim within 90 days of that date, which would be April 5, 2022, or file a motion for a late notice of claim.  The Complaint does not allege that Plaintiff took either of those steps. Because the Complaint fails to alleged compliance with the mandatory statutory prerequisites for pursuit of any state law tort claims against State Defendants, those claims should be dismissed with prejudice.

## **CONCLUSION**

For the foregoing reasons, State Defendants respectfully request that Plaintiff's

Complaint against the State Defendants by dismissed with prejudice.


Respectfully submitted,

Matthew J. Platkins
ACTING ATTORNEY GENERAL OF NEW JERSEY

By:     s/ Peter Sosinski
        Peter Sosinski
        Deputy Attorney General
        Attorney ID # 210552017

DATE:  July 12, 2022