**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

MARC A. STEPHENS,

Plaintiff,

v.

GURBIR S. GREWAL, ATTORNEY
GENERAL, STATE OF NEW JERSEY, *et al.*,

Defendants.

HONORABLE KAREN M. WILLIAMS

Civil Action
No. 22-01989 (KMW-MJS)

**OPINION**

APPEARANCES:

MARC A. STEPHENS
271 ROSEMONT PL
ENGLEWOOD, NJ 07631

   *Appearing Pro Se*

THOMAS FRANCIS SINDEL, JR., ESQ.
OFFICE OF THE ATTORNEY GENERAL OF NEW JERSEY
TORT LITIGATION AND JUDICIARY SECTION
25 MARKET STREET, P.O. BOX 116
TRENTON, NJ 08625

   *Counsel for Defendants Gurbir S. Grewal, Attorney General, Atlantic County Prosecutor's*
   *Office, and Detective Sergeant Michael Mattioli.*

RACHEL B. KRISTOL, ESQ.
TIMOTHY P. O'BRIEN, ESQ.
STATE OF NEW JERSEY OFFICE OF ATTORNEY GENERAL
25 MARKET STREET, P.O. BOX 112
TRENTON, NJ 08625

   *Counsel for Defendant Stockton University and Robert Blaskiewicz, Jr.*

TODD J. GELFAND, ESQ.
BARKER, GELFAND & JAMES
SUITE 12, 210 NEW ROAD
LINWOOD, NJ 08221

*Counsel for Galloway Township*

**WILLIAMS, District Judge:**

## I.    INTRODUCTION

This case arises out of Plaintiff Marc Stephen's retention as a cyber security expert to investigate a "cyber-attack" on the Burzynski Clinic, his identification of the alleged perpetrators of the cyber-attack, and their responses to same, which culminated in the dismissal of *State of New Jersey v. Marc Stephens*, (the "State case"), where Plaintiff was indicted on one count of fourth-degree cyber-harassment. No. 18-09-01567-1, (N.J. Super. Ct. App. Div. Jan. 5, 2022); *see also* (ECF No. 1 at Ex. 32). Plaintiff filed the instant Complaint alleging that Defendants[1] harmed him by:

- violating his Due Process rights under 42 U.S.C. §1983, the Fifth and Fourteenth Amendments under the United States Constitution, the New Jersey Civil Rights Act, and Article I of the New Jersey Constitution;

- engaging in malicious prosecution, intentional infliction of emotional distress, and defamation of character;

- filing frivolous claims and utilizing false evidence against him; and

- that the institutional Defendants engaged in negligent hiring and arguing for the application of *respondeat superior* to redress the insufficient training and supervision of the individual Defendants.

Defendants have all moved to dismiss Plaintiff's Complaint in its entirety. For the reasons that follow, University Defendants' Motion to Dismiss (ECF No. 9) and Prosecutor-Defendants'

---

[1] Defendants in this matter are Stockton University and Robert Blaskiewicz, Jr., ("University Defendants"), the Atlantic County Prosecutor's Office, Attorney General Grubir S. Grewal, and Detective Michael Mattioli, ("Prosecutor-Defendants"), and Galloway Township.

Motion to Dismiss (ECF No. 16), will be **GRANTED IN PART AND DENIED IN PART.**
Defendant Galloway Township's Motion to Dismiss (ECF No. 13) will be **GRANTED**.

## II.    BACKGROUND

### A.  Factual Background

The Court will only recite the facts of the Complaint necessary to resolve the motions at
issue. According to the Complaint, on November 22, 2011, Plaintiff was hired by the Burzynski
Clinic as a consultant to investigate an "online attack" on the clinic. (ECF No. 1 at ¶12). Plaintiff
alleges that Defendant Blaskiewicz was part of a group called the "Skeptics Society" who allegedly
took part in the attack on the clinic and upon Plaintiff's discovery of their involvement, they sent
death threats to Plaintiff and various of his family members. Plaintiff describes making numerous
complaints to several local police departments, the FBI, and filing lawsuits against Defendant
Blaskiewicz and others allegedly in the Skeptics Society from 2011 through 2017. (*Id.* at ¶¶13-
36).

On February 10, 2017, Prosecutors filed a criminal complaint claiming Plaintiff engaged
in cyber harassment against Defendant Blaskiewicz. (*Id.* at ¶¶38-39). Plaintiff alleges that
Defendant Blaskiewicz fabricated social media accounts pretending to be Plaintiff to build this
case, and that Defendant Atlantic County Prosecutor's Office and Defendant Detective Mattioli,
using the allegedly fake media accounts as evidence, provided false testimony to a grand jury. (*Id.*
at ¶¶40-42). On September 18, 2018, Plaintiff was indicted by the Grand Jury on charges of cyber
harassment and threatening physical harm against Defendant Blaskiewicz. (*Id.* at ¶43). Plaintiff
was unaware of this case at the time and because he did not respond to the summons it became a
felony warrant which allegedly caused the denial of Plaintiff's passport in 2020. (*Id.* at ¶¶44-45).

Ultimately, on January 5, 2022, a Judge dismissed the indictment and the Prosecutor declined to re-try the case. (*Id*. at ¶¶48-49).

### B. Procedural Posture

On April 4, 2022, Plaintiff filed the instant Complaint. (ECF No. 1). On June 21, 2022, University Defendants filed their motion to dismiss. (ECF No. 9). On June 28, 2022, Defendant Galloway Township filed its Motion to Dismiss, (ECF No. 13), to which Plaintiff did not file any opposition.[2] On June 30, 2022, Plaintiff filed in opposition to University Defendants, (ECF No. 14) and on July 11, 2022, University Defendants replied. (ECF No. 15). On July 12, 2022, Prosecutor-Defendants filed their Motion to Dismiss, (ECF No. 16), Plaintiff opposed same on July 25, 2022, (ECF No. 17), and on August 8, 2022, Prosecutor-Defendants replied. (ECF No. 18). Thus, these motions are ripe for resolution.

### III. LEGAL STANDARDS

### A. Motion to Dismiss 12(b)(1)

Under Rule 12(b)(1), a defendant may seek dismissal of a complaint based on a court's lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "At issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.'" *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (citing *Marbury v. Madison*, 5 U.S. 137, 1 Cranch (5 U.S.) 137, 173-180 (1803)).

---

[2] Therefore, the motion is unopposed for this Opinion's purposes.

When considering a Rule 12(b)(1) motion challenging subject matter jurisdiction, "[a] district court has to first determine . . . whether [the] motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014) (citing *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012)). As the Third Circuit explained in *Constitution Part of Pennsylvania v. Aichele*:

> A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present. Such an attack can occur before the moving party has filed an answer or otherwise contested the factual allegations of the complaint.

*Id.* at 358 (citing *Mortensen*, 549 F.2d at 891). On the other hand, a factual attack "is an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Id.*

The Third Circuit has held that, although Eleventh Amendment immunity is not, strictly speaking, a matter of subject-matter jurisdiction, it nonetheless analyzes the jurisdictional aspects of sovereign immunity under the scope of a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction." *See Wilson v. N.J. Dep't of Corrs.*, No. 16-7915, 2017 U.S. Dist. LEXIS 170321 at *5, *8-9 (D.N.J. Oct. 13, 2017 (citing *CNA v. United States*, 535 F.3d 132, 140 (3d Cir. 2008)).

Therefore, in the context of the motions at bar raising Eleventh Amendment immunity as a defense, the Court will review the pleading under a facial attack analysis. "'[T]he court must only consider the allegations of the complaint and documents referenced therein and attached

thereto, in the light most favorable to the plaintiff.'" *Id.* (quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). "[A] facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." *Id.* (citation omitted).

### B.  Motion to Dismiss (12)(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and

plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557).

Generally, a district court may consider; allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint. *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 551 (D.N.J. 2013) (citing *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir.1990)). Thus, a court cannot consider matters that are extraneous to the pleadings. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, courts may consider documents integral to or explicitly relied upon in the complaint without converting the motion to dismiss to one for summary judgment. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426). In this regard, it is critical to consider "whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

### C. Fed. R. Civ. P. 8(a)

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a complaint seeking to raise a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. P. 8(a)(2). Each allegation in a complaint must therefore be "concise and direct." Fed. R. Civ. P. 8(e)(1). A district Court may dismiss a complaint *sua sponte* for failure to comply with Rule 8. *Ruther v. State Kentucky Officers*, 556 F. App'x 91, 92 (3d Cir. 2014). A complaint may therefore be dismissed pursuant to Rule 8 where the "'complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Id.* (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). Dismissal is proper, therefore, where a complaint is illegible, incomprehensible, indecipherable, or largely

unintelligible. *See id.*; *Elliott v. Point Breeze Station Mail Dep't*, 711 Fed. Appx. 71, 72-73 (3d Cir. 2017); *Scibelli v. Lebanon Cnty.*, 219 F. App'x 221, 222 (3d Cir. 2007); *Stephanatos v. Cohen*, 236 F. App'x 785, 787 (2007).

However, in dismissing an unintelligible complaint pursuant to Rule 8, a reviewing court should provide the party whose pleading is dismissed an opportunity to amend. Therefore, the appropriate action when faced with an unintelligible complaint is to dismiss the complaint without prejudice to the filing of an amended complaint. *Ruther*, 556 F. App'x at 92; *Moss v. United States*, 329 F. App'x 335, 336 (3d Cir. 2009); *Simmons*, 49 F.3d at 86-87.

## IV.  DISCUSSION

At the outset, the Court acknowledges that when determining the sufficiency of a *pro se* complaint, the Court must be mindful of accepting its factual allegations as true. *See James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012). A *pro se* plaintiff's complaint must be construed liberally, but this does not absolve a *pro se* plaintiff from complying with the Federal Rules of Civil Procedure. *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) ("a pro se complaint . . . must be held to 'less stringent standards than formal pleadings drafted by lawyers;' . . . but we nonetheless review the pleading to ensure that it has 'sufficient factual matter; accepted as true; to state a claim to relief that is plausible on [its] face.'").

### A.  Eleventh Amendment Immunity

Because "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction," the Court will first address the Eleventh Amendment defense asserted by University Defendants and Prosecutor-Defendants. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 (3d Cir. 1996).

Generally, the Eleventh Amendment can extend to State agencies acting as "arms of the state,"[3] and may further extend to individual State officials when they are sued for damages. *Brady v. Office of the Cty. Prosecutor*, No. 19-16348, 2020 WL 5088634 at *3 (D.N.J. Aug. 28, 2020). The Third Circuit has a three-factor test (collectively called the "*Fitchik* factors") to determine whether an entity is an arm of the State for Eleventh Amendment purposes, which requires a court to review: 1) the source of the entity's funding ("the funding factor"), 2) the State law status of the entity ("the status factor"), and 3) the level of autonomy the entity has from the State ("the autonomy factor"). *See Bowers v. NCAA*, 475 F.3d 524, 545-46 (3d Cir. 2007).

The funding factor "hinges" on whether the payment of the judgment would come from the State. *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 86 (3d Cir. 2016). To this end, three subfactors to consider are whether the State has a legal obligation to pay a money judgment if it is entered against the entity, if the entity has alternative sources of funding, or if there are any specific statutory provisions that immunize the State (and, subsequently, the entity) from liability for money judgments. *Id.*

The status factor focuses on what status the entity has under State law. *Id.* at 91. The Court is to consider how State law treats the entity generally: if there are any explicit statutory indications relating to the entity, whether case law from the State courts, especially a State's Supreme Court, has determined the entity's status previously, or if the State (and therefore its delegates) has waived its own immunity to certain laws. *Id.* The status factor also considers the incorporation of the entity, as well as its ability to sue and be sued, whether it is immune from State taxes, if it has a sovereign power such as eminent domain, if the entity is subject to a State's administrative procedure and

---

[3] "Arms of the State" are defined as entities that, by their very nature, are so intertwined with the State that any suit against them renders the State the real, substantial party in interest. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974).

civil service laws, whether an entity has the power to enter into contracts, and whether an entity retains title to its land. *Id*. at 93-96.

The autonomy factor focuses on what degree of autonomy the entity has from the State. *Id*. at 96. For this factor, the Court considers an entity's governing structure, as well as the oversight and control that the State exerts over the entity via its Governor and Legislature. *Id*.

An entity does not need to meet all three factors for immunity to apply; the Court is responsible to balance the factors, which have equal weight, after a highly fact intensive review. *See Bowers*, 475 F.3d at 546; *see also Maliandi*, 845 F.3d at 84. Therefore, each case requires individualized determinations. *Id*.

Here, both Defendant Stockton University and Prosecutor-Defendants assert that they are protected by Eleventh Amendment immunity against Plaintiff's claims. Regarding Defendant Stockton University, it asserts that it should be immune from suit because it satisfies two out of the three *Fitchik* factors—the status factor and autonomy factor—and provides a litany of facts to demonstrate that it is generally considered a State entity under State law and lacks autonomy from the State government. (ECF No. 9 at 4-6). Defendant Stockton University further argues that it is "materially indistinguishable" from Montclair University and Ramapo College, which were found to be "arms of the state" by other courts in this District, and on this basis it should also enjoy Eleventh Amendment immunity. (*Id*. at 4, 6).

However, the Court cannot rely on this comparison because "each case must be considered on its own terms, with courts determining and then weighing the qualitative strength of each individual factor in the unique factual circumstances at issue." *Rowan Univ. v. Factory Mut. Ins. Co.*, No. 21- 08992, 2021 WL 4947374 at *4 (D.N.J. Oct. 25, 2021) (quoting *Karns v. Shanahan*, 879 F.3d 504, 513 (3d Cir. 2018)). Moreover, Defendant Stockton University has not provided a

single fact related to the funding factor. Without any set of facts to evaluate the funding factor, the Court is unable to fully and properly assess all of the *Fitchik* factors as required.

On this point, the Prosecutor-Defendants' arguments for Eleventh Amendment immunity also fail because they do not affirmatively address the *Fitchik* factors at all. *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 857-58, 585 n.8 (3d Cir. 2014) ("*Fitchik* controls the Eleventh Amendment inquiry."). Discussion of the *Fitchik* factors is necessary, and failure to do so prevents Eleventh Amendment immunity from applying because "the party asserting Eleventh Amendment immunity bears the burden of proving entitlement to it." *See Brady*, 2020 WL 5088634 at *3 (quoting *Robinson v. Paulhus*, No. 19-12572, 2020 WL 2732132 at *2 (D.N.J. May 22, 2020)).

Therefore, the Court must deny both University Defendants' and Prosecutor-Defendants' Motions to Dismiss to the extent they rely on the application of Eleventh Amendment immunity.

### B. §1983 Claims

Next, the Court will turn to Plaintiff's §1983 claims. To prevail on a claim under §1983, "a plaintiff must prove that his constitutional rights were violated by someone acting under color of state law." *Rodriguez v. Fajardo*, No. 06-4996, 2007 WL 1959254 at *7 (D.N.J. Jul. 3, 2007) (internal citations and quotations omitted). "Generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Traynor v. Billhimer*, No. 21-7463, 2023 WL 2214178 at *6 (D.N.J. Feb. 24, 2023) (quoting *Willson v. Yerke*, 604 Fed. App'x 149, 150 n.4 (3d Cir. 2015)). However, "a state employee who pursues purely private motives and whose interaction with the victim is unconnected with his execution of official duties does not act under color of law[.]" *Walker v. City of Newark*, No. 19-16853, 2020 U.S. Dist. LEXIS 115437 at *14 (D.N.J. Jul. 1, 2020) (internal citations and

quotations omitted). For example, when a police officer entered the home of a man and assaulted him over exposing an affair with his wife, he was not acting under the color of State law because the assault was of a personal nature that did not involve his role as a police officer. *See Stroby v. Egg Harbor Twp.*, 754 F. Supp. 2d 716, 720 (D.N.J. 2010). The court in *Stroby* noted that the actions the police officer took did not invoke any indicia of his State-given powers (*i.e.*, he did not invoke any legal authority over the victim, such as displaying his badge, utilize any of his police-issued weapons, nor made any attempt to arrest the victim). *See id.*

Here, the Court finds a similar lack of connection between Defendant Blaskiewicz's role as a professor and the alleged conduct. The Complaint is devoid of any allegations that Defendant Blaskiewicz engaged in any of the alleged behavior while performing, or in connection with, his role at the University. The Complaint asserts that Defendant Blaskiewicz created fake social media accounts, sent harassing or threatening email messages, and lied to the police to initiate criminal proceedings, (ECF No. 1 at ¶¶31-36, 38-40). However, there are no facts in the Complaint to even suggest that Defendant Blaskiewicz utilized any of his State-given powers as a university professor to engage in the alleged conduct.

Simply put, the facts as plead do not support Plaintiff's §1983 claims against Defendant Blaskiewicz and the Court must dismiss these claims.

In contrast, the Complaint does assert facts to demonstrate that the Prosecutor-Defendants' actions were connected to their performance of their official duties when they were prosecuting the State case against Plaintiff, (with the exception of Defendant Attorney General Grewal).[4]

---

[4] To state a claim against an individual government defendant in a civil rights action, a complaint must allege how that defendant had personal involvement in the wrongdoing. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) ("The Third Circuit has held that a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible."). The requirement of personal involvement is required even where a plaintiff tries to hold a defendant accountable under *respondeat superior* or supervisory liability. *Saisi v. Murray*, 822 Fed. App'x 47, 48 (3d Cir. 2020). A defendant cannot be held liable "simply because of his position as the head of [an agency]." *Id.* Here, Plaintiff fails to provide any facts whatsoever to show how Defendant Attorney General Grewal was involved

However, officials acting in their "official capacity" are not "persons" for the purposes of §1983 or the NJCRA and therefore cannot be held liable for violations thereunder in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under §1983."); *Didiano v. Balicki*, 488 F. App'x 634, 637-39 (3d Cir. 2012) (holding that the "person" should not be interpreted differently under the NJCRA than in the context of §1983); *see also Estate of Martin*, 649 F. App'x at 245 n.4.[5]

Therefore, the Court will dismiss Plaintiff's claims against Defendant Atlantic County Prosecutor's Office because the Prosecutor's Office is not a "person" pursuant to §1983, and Plaintiff has not identified any individual Prosecutor to be sued in their personal capacity. However, because Plaintiff has identified Defendant Detective Mattioli who can be sued pursuant to §1983 in his personal capacity, this Court will review Plaintiff's §1983 claims against him. *See Hafer v. Melo*, 502 U.S. 21 (1991).

### i. Immunity Defense of Defendant Detective Mattioli

Defendant Detective Mattioli contends that he is immune from suit. Two kinds of immunity can apply to those sued in their personal capacity under §1983: absolute immunity and qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). In determining whether absolute immunity is applicable the Court must engage in a "functional" analysis of each alleged activity. *Id.* at 811. Three factors determine whether a government official should be given absolute

---

in the underlying State case. The Complaint does not provide any information as to the time or place, or any facts to demonstrate that Defendant Attorney General Grewal participated in, or was even aware of, the alleged conduct to demonstrate his personal involvement. Aside from Defendant Attorney General Grewal's name appearing in the case's caption and in the subheadings of Counts 1-3, there is no other acknowledgement of his involvement in this matter. Therefore, the Court must dismiss all claims against Defendant Attorney General Grewal for failure to state a claim pursuant to Fed. R. Civ. P. 8(a).

[5] Hereafter, while the Court will only reference the §1983 claims for brevity and clarity, the analysis also encompasses the NJCRA claims.

immunity for a particular function: 1) whether there is "a historical or common law basis for the immunity in question;" 2) whether performance of the function poses a risk of harassment or vexatious litigation against the official; and 3) whether there exist alternatives to damage suits against the official as means of redressing wrongful conduct. *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992) (citations omitted). The Third Circuit has determined that prosecutors, and other individuals serving in a similar capacity, are afforded absolute immunity when their acts are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Yarris v. County of Delaware*, 465 F.3d 129, 135 (3d Cir. 2006) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976)).

Further, grand jury witnesses—including law enforcement witnesses—are entitled to absolute immunity from any claim based on their testimony. *See Rehberg v. Paulk*, 566 U.S. 356, 367 (2012). The solicitation of even false testimony from witnesses in grand jury proceedings, as well as the use of false testimony in connection with further prosecution, is "absolutely protected." *Kulwicki*, 969 F.2d at 1465.

Here, Plaintiff alleges that Defendant Detective Mattioli reviewed fabricated social media accounts and provided false testimony about these accounts to the Grand Jury. (ECF No. 1 at ¶40). Because grand jury witnesses, including law enforcement witnesses, are entitled to absolute immunity from any claims based on their testimony, all claims related to Defendant Detective Mattioli's testimony must be dismissed.

Regarding Plaintiff's other allegations against Defendant Detective Mattioli, it is unclear from the Complaint whether, and to what extent, Defendant Detective Mattioli had participated in the underlying investigation, (aside from reviewing the materials provided by Defendant Blaskiewicz for purposes of his grand jury testimony), and whether he was involved in the decision

to institute the criminal proceedings against Plaintiff. The Complaint makes broad, general allegations related to all Defendants and does not assert any specific facts about Defendant Detective Mattioli's actions for the Court to assess. Because a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation[s]," Plaintiff's remaining claims against Defendant Detective Mattioli must be dismissed. *Ashcroft*, 556 U.S. at 678.

### C. *Monell* and Respondeat Superior Claims against Defendant Galloway Township

Plaintiff baldly asserts that Defendant Galloway Township is responsible for violating his due process rights, engaging in malicious prosecution and abuse of process, utilizing false evidence, intentionally inflicting emotional distress, defamation of character, and violating Plaintiff's civil rights. Although Defendant Galloway Township is an entity and not an individual directly engaging in these violations, Plaintiff asserts that it should be held responsible for these violations through the doctrine of *respondeat superior* and through the application of the *Monell* Doctrine. However, these doctrines are not interchangeable and are only applicable in specific situations.

For instance, the *Monell* Doctrine only applies when a plaintiff brings a §1983 claim against a municipality. For a municipality to be held liable under §1983, there must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). It is not enough to identify conduct properly attributable to the municipality: a plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. *Belin v. O'Neill*, No. 17-13207, 2019 WL 6493942 at *3 (D.N.J. Dec. 3, 2019) (citing *Vulcan Pioneers of New Jersey v. City of Newark*, No. 02-5802, 2008 WL 4224941 at *4 (D.N.J. Sept. 10, 2008), *aff'd*, 374 F. App'x 313 (3d Cir. 2010)).

In contrast, *respondeat superior* is a legal doctrine where a court may impose vicarious liability on the employer of a person who has committed an independent tort. *Williams v. Verizon N.J., Inc.*, No. 19-09350, 2020 WL 1227663 at *11 (D.N.J. Mar. 12, 2020). To establish that an employer should be held liable for an employee's tortious acts, a plaintiff must show: that the wrongdoer is employed by the defendant, that acts or omissions caused injuries or damages to others, and that the employee committed the acts or omissions within the scope of his or her employment, "*i.e.*, when the employee was performing the services for which he or she had been engaged." *Id.* (citing *Davis v. Devereux Found.*, 209 N.J. 269, 287 (2012); 23 Restatement (Second) of Agency § 219 (1958)).

Most importantly, the doctrine of *respondeat superior* cannot be applied to municipalities like Defendant Galloway Township in the context of a §1983 claim. "For constitutional torts [under §1983] or the analogous provisions of the New Jersey Civil Rights Act, there is no *respondeat superior* liability. Municipal liability for the acts of employees must be premised on [the *Monell* Doctrine]." *Abdallah v. City of Paterson*, No. 16-4660, 2017 U.S. Dist. LEXIS 82135 at *8-9 (D.N.J. May 26, 2017).

Here, Plaintiff asserts two constitutional torts that must be premised on the *Monell* Doctrine: violation to his due process rights and violation of his civil rights concerning the "failure to implement appropriate policies, customs, and practices." (ECF No. 1 at ¶¶55-58, 89-91). However, Plaintiff does not state sufficient facts to assert a *Monell* claim. For Defendant Galloway Township to be held liable under the *Monell* Doctrine, Plaintiff has to present a municipal policy or custom and assert that it had a causal connection to his alleged deprivation. The Complaint does not point to any policy, custom, or practice related to Galloway Township at all. Moreover, the Complaint is deficient as to any facts that could conceivably establish a *Monell* claim, let alone

provide the necessary facts to show deliberate conduct on the part of Defendant Galloway Township to demonstrate it was the "driving force," behind the deprivation Plaintiff asserts.

Next, Plaintiff asserts several non-constitutional torts, however, these claims also cannot survive against Defendant Galloway Township due to a lack of factual support. To establish that an employer should be held liable for an employee's tortious acts under the *respondeat superior* doctrine, Plaintiff must show that there was an employee of Defendant Galloway Township involved in the complained of conduct. Plaintiff has not identified any employee or agent of Defendant Galloway Township involved in the State case. With no employees or agents for Defendant Galloway Township to be vicariously responsible for, *respondeat superior* cannot apply to any other tort in the Complaint as alleged.[6]

Therefore, the Court must grant Defendant Galloway Township's Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 8(a).

### D. New Jersey Tort Claims Act

All claims concerning the New Jersey Tort Claims Act ("NJTCA") must be dismissed. The NJTCA requires that: "[n]o action shall be brought against a public entity or public employee under this [A]ct unless the claim [is] . . . presented in accordance with the procedure set forth in this [Act]." N.J.S.A. 59:8-3. The caselaw clearly establishes that "a claimant will be 'forever barred' from recovery against a public employee or entity if she fails 'to file the claim with the public entity within 90 days of accrual.'" *Handley v. University*, No. 21-16889, 2022 WL 4115730 at *15 (D.N.J. Sept. 9, 2022) (quoting *McNellis-Wallace v. Hoffman*, 464 N.J. Super. 409, 417, 236 A.3d 1014 (App. Div. 2020).

---

[6] Further, a public entity like Defendant Galloway Township cannot be held liable for the intentional torts of a public employee. *See Panarello v. City of Vineland*, 160 F. Supp. 3d 734, 767 (D.N.J. 2016). Intentional torts must be effectuated through the NJTCA.

While the procedure requires a written notice be filed with the public entity within 90 days of a claim's accrual, N.J.S.A. 59:8-9 provides an exception:

> A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of [the Tort Claims Act], may, in discretion of a judge[], be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by section 59:8-8 of [the Tort Claims Act] or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter[.]

N.J.S.A. 59:8-9.

To assess whether a claimant submitted timely notice according to the NJTCA requires the Court to perform a three-step sequential analysis: it must determine when the cause of action accrued, whether a notice of claim was filed within 90 days, and whether extraordinary circumstances exist to justify filing a late notice. *See Handley*, 2022 WL 4115730 at *15. According to the act, "[a]ccrual shall mean the date on which the claim accrued." N.J.S.A. 59:8-1. New Jersey caselaw establishes that the date of accrual of a tort claim is the date on which the negligent action or omission occurred. *See Vasquez v. Rutherford*, No. 07-1350, 2007 WL 2137937 at *4 (D.N.J. Jul. 23, 2007) (citing *Beauchamp v. Amedio*, 164 N.J. 111, 116 (2000)). The only exception to this standard occurs when the victim of the tort is either not aware of the injury, or the victim is unaware that a third party is responsible for the injury. *See id.*

First, in the instant case, the accrual of the claim began on January 27, 2022. With the Court providing the most generous reading of the Complaint, Plaintiff knew that he was injured by the Defendants in the ways he alleged by January 27, 2022, the day the Atlantic County Prosecutor's Office declined to re-try the State case. *See* (ECF No. 1 at ¶49). This was the last action any

Defendant allegedly took against Plaintiff. By January 27, 2022, Plaintiff was fully aware of the State case that was brought against him, had access to the records showing who was involved in that matter, and had incurred the harms that form the basis of his Complaint.

Turning to the second element of the sequential analysis, Plaintiff has not provided the written notice within 90 days as required. Plaintiff asserts that he provided notice to Defendants, citing to an email titled "Notice of Tort and Civil Complaint" that he sent to Defendant Stockton University in his first attempt at serving his Complaint. (ECF No. 14, Ex. A& B). However, the record does not show a notice of tort claim being sent to any of Defendants. (*Id.*); *see also* (ECF No. 9 at Ex. A) (showing an affidavit from the Department of the Treasury stating that there are no records of any Notice of Claim from Plaintiff filed for any Defendant in this matter). Simply titling an email "Notice of Tort and Civil Complaint" to one Defendant while attempting to improperly serve them a complaint is not sufficient to demonstrate that Plaintiff intended to file an NJTCA claim.

Third, Plaintiff does not identify any extraordinary circumstances that would justify his failure to comply with the notice requirement within the 90-day time frame. Rather, Plaintiff argues that as a *pro se* litigant he is entitled to the application of the substantial compliance doctrine and that he is still within the one-year window to request an extension of time.

The doctrine of substantial compliance can only be applied to the mandatory notice procedures of NJTCA when a plaintiff had provided "notice, [that was] both timely and in writing, [but] had technical deficiencies that did not deprive the public entity of the effective notice contemplated by the statute." *Meale v. City of Egg Harbor City,* No. 14-5860, 2015 WL 3866222, at *4-5 (D.N.J. Jun. 23, 2015) (quoting *D.D. v. Univ. of Med. and Dentistry of N.J.,* 213 N.J. 130, 159 (2013)). To avail himself of an extension as provided by the NJTCA, Plaintiff must show

"sufficient reasons constituting extraordinary circumstances for [the plaintiff's] failure to file notice of claim within the period of time prescribed," only if the plaintiff files a late notice "within one year after the accrual of his claim." *Niblack v. SCO Malbreen*, No. 15-5298, 2016 WL 1628881 at *3 (D.N.J. Apr. 25, 2016) (quoting N.J. Stat. Ann. § 59:8-9).

Here, Plaintiff cannot request an extension because he did not provide notice that "was timely filed and in writing but was technically deficient" pursuant to the requirements of the statute. *Meale*, 2015 WL 3866222, at *4-5. Additionally, Plaintiff has not provided any reason, much less extraordinary circumstances, as to why he has failed to timely file his claims to justify receiving an extension.

Therefore, the Court must dismiss Plaintiff's NJTCA claims against all Defendants.

## V.     CONCLUSION

For the reasons set forth above, University Defendants' Motion to Dismiss (ECF No. 9) and Prosecutor-Defendants' Motion to Dismiss (ECF No. 16), will be **GRANTED IN PART AND DENIED IN PART**. Defendant Galloway Township's Motion to Dismiss (ECF No. 13) will be **GRANTED**. An order consistent with this Opinion will be entered.

May 15, 2023

KAREN M. WILLIAMS, U.S.D.J.